## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HAIGHTS CROSS COMMUNICATIONS, INC., et al., | Case No. 10-10062 (BLS) |
| Debtors.[1] | Jointly Administered |
| | Re: Docket No. 12 |

### INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING

Upon the motion, dated January 11, 2010 (the "Motion"), of Haights Cross Communications, Inc. ("Holdings") and certain of its direct and indirect subsidiaries, each as a debtor and debtor in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an interim order (this "Interim Order"):

     (i)     authorizing the Debtors' use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") of the Prepetition Agent and Prepetition Secured Lenders (each as defined herein);

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Haights Cross Communications, Inc. (7398), Haights Cross Operating Company (7416), Triumph Learning, LLC (7400), Recorded Books, LLC (7163) and SNEP, LLC (f/k/a Sundance/Newbridge Educational Publishing, LLC) (1159). The address for each of the Debtors solely for purposes of notices and communications is 10 New King Street, Suite 102, White Plains, NY 10604.

(ii)    providing adequate protection to the Prepetition Agent and Prepetition Secured Lenders for any diminution in value of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(iii)   vacating and modifying the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(iv)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein), and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the Declaration of Paul J. Crecca in Support of Debtors' Chapter 11 Petitions and Request for First Day Relief, sworn to on January 11, 2010, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 12, 2010 (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules, notice of the Interim Hearing having been given in a manner that is appropriate and adequate under the circumstances; and the Interim Hearing having been held pursuant to Bankruptcy Rule 4001(b)(2) and concluded; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration thereof, and for good and sufficient cause appearing therefor;

2

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     Petition Date.  On January 11, 2010 (the "Petition Date"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code commencing these Chapter 11 Cases.

B.     Debtors in Possession.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.     Jurisdiction and Venue.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases appears proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Statutory Committee.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") has yet to appoint an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

E.     Plan Support Agreement.  On September 3, 2009 (i) the Debtors, (ii) the Prepetition Secured Lenders, (iii) certain holders of 12.5% Senior Discount Notes due 2011, issued by Holdings and (iv) certain holders of 11.75% Senior Notes due 2011, issued by Haights Cross Operating Company ("Haights") (parties referred to in (ii) through (iv) collectively referred to herein as, the "Plan Support Parties"), entered into a plan support agreement (as

3

amended, the "Plan Support Agreement") setting forth the terms and conditions of a consensual restructuring of the Debtors' businesses.

F.     Debtors' Stipulations.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in Paragraph 18 herein, the Debtors stipulate and agree as follows:

(i)     *Prepetition Credit Agreement.*  Pursuant to that certain Credit Agreement, dated as of August 15, 2008 (as amended, supplemented or otherwise modified, the "Prepetition Credit Agreement"; together with all other loan and security documents related to, referenced in or executed in connection with, the Prepetition Credit Agreement, the "Prepetition Credit Documents"), among Haights, as borrower (the "Borrower"), The Bank of New York Mellon (as successor to DDJ Capital Management, LLC) or any successor thereto, as administrative agent and collateral agent (the "Prepetition Agent"), the lenders party thereto from time to time (collectively, the "Prepetition Secured Lenders") and the guarantors party thereto from time to time, the Prepetition Secured Lenders provided a term loan facility (the "Prepetition Credit Facility") to the Borrower.  The Prepetition Credit Documents govern the rights and obligations of the Prepetition Agent and the Prepetition Secured Lenders.

(ii)     *Prepetition Credit Obligations.*  The Prepetition Credit Facility provided the Debtors with term loans in the aggregate principal amount of $108,200,000, the entire amount of which was drawn and outstanding as of the Petition Date (together with all principal, accrued and unpaid interest, capitalized interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), reimbursement obligations, indemnification obligations and other

4

charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof to the extent and as provided for in the Prepetition Credit Documents, including all "Obligations" as defined in the Prepetition Credit Agreement, the "Prepetition Credit Obligations"). The Prepetition Agent, on behalf of the Prepetition Secured Lenders, has an allowed claim against each Debtor in connection with the Prepetition Credit Obligations in the amount of at least $110,138,665.60 as of the Petition Date, which amount includes interest that has been capitalized prior to the Petition Date pursuant to the terms of the Prepetition Credit Documents, plus any accrued and unpaid fees payable in connection with the Prepetition Credit Agreement.

(iii) *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtors granted security interests in and liens (the "Prepetition Liens") on, among other things, substantially all of the Debtors' existing and after-acquired personal property, real property and other assets, whether owned by, consigned to or leased from or to the Debtors, to the full extent of the Debtors' interest therein and regardless of where located, including the proceeds and products of, accessions to, substitutions and replacements for, and rents and profits of all such property and assets (collectively, the "Prepetition Collateral"), to the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Lenders.

(iv) *Validity and Perfection of Prepetition Liens and Prepetition Credit Obligations.* Each Debtor acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) the Prepetition Credit Obligations constitute the

5

legal, valid, binding, and non-avoidable obligations of the Debtors; (c) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Credit Obligations exist, and no portion of the Prepetition Liens or Prepetition Credit Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Debtors and their respective estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Agent, the Prepetition Secured Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to, their loans or other financial accommodations to the Debtors under the Prepetition Credit Documents.

(v)     *Priority of Prepetition Liens.*   As of the Petition Date, the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, collectively, the "Permitted Prior Liens").[2]

(vi)    *Cash Collateral.*  Each Debtor represents that all of its cash, including the cash in its deposit accounts, wherever located, whether as original

---

[2] Nothing herein shall constitute a finding or ruling by the Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Prepetition Agent, the Prepetition Secured Lenders, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien.

RLF1 3525498v.1

Prepetition Collateral or proceeds of other Prepetition Collateral, constitutes the Cash Collateral of the Prepetition Agent and the Prepetition Secured Lenders. Paragraphs F(i) through F(vi) are referred to herein as, the "Debtors' Stipulations" and are not findings of the Court.

G.      Adequate Protection.  The Prepetition Agent, for the benefit of itself and the Prepetition Secured Lenders, is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Prepetition Collateral (including the Cash Collateral) resulting from (a) the use of Cash Collateral, (b) the use, sale, lease, consumption or disposition of Prepetition Collateral authorized herein or other form of diminution in value of the Prepetition Collateral, (c) the subordination of the Prepetition Liens to the Carve Out (as defined and as described herein) or (d) the imposition of the automatic stay with respect to the Prepetition Agent and the Prepetition Secured Lenders (collectively, the "Diminution in Value"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code.

H.      Sections 506(c) and 552(b).  In light of the Prepetition Agent's and Prepetition Secured Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral for payments made in accordance with the Budget (as defined herein) and this Interim Order, the Prepetition Agent and Prepetition Secured Lenders are entitled, upon entry of a Final Order, (i) to the extension of the security interests in the Prepetition Collateral created by the Prepetition Credit Documents to proceeds, products, offspring or profits of such Prepetition Collateral acquired by the Debtors or their respective estates after the Petition Date and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

7

I. **Necessity of Relief Requested**. The ability of the Debtors to finance their operations requires the use of Cash Collateral, absent which immediate and irreparable harm would result to the Debtors, their estates and their creditors. The Debtors do not have sufficient available sources of working capital or financing to operate their businesses in the ordinary course of business or to maintain their property. As a result, absent the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors, their estates and their creditors would occur. The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' businesses and the preservation of their property. The Prepetition Agent, the Prepetition Secured Lenders and the Debtors have negotiated at arm's length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (as defined herein). The terms and conditions of this Interim Order are fair, reasonable and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and consideration, and the Cash Collateral to be used by the Debtors in accordance with the Budget will be used in good faith and for valid business purposes and uses. Entry of this Interim Order is in the best interests of the Debtors, their estates, and their creditors and equity holders.

J. **Final Hearing**. At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance reasonably satisfactory to the Debtors and the Requisite Plan Support Parties (as defined in the

8

Plan Support Agreement), notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

K. <u>Notice</u>. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the United States Trustee; (ii) the parties included on the Debtors' consolidated list of the thirty (30) largest unsecured creditors; (iii) counsel to the Prepetition Agent; (iv) counsel to the Prepetition Secured Lenders; and (v) other secured parties of record. The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. <u>Motion Granted</u>. The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2. <u>Objections Overruled</u>. All objections to the Motion to the extent not withdrawn or resolved are overruled.

3. <u>Authorization to Use Cash Collateral; Budget Constraints</u>. Subject to Paragraphs 14 and 15 of this Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the Budget for the period (the "<u>Specified Period</u>") from the Petition Date through the earliest to occur of (i) the date of entry of the Final Order, (ii) the Termination Declaration Date (as defined herein) and (iii) the forty-fifth (45th) day after the Petition Date

9

(such forty-fifth day, the "Interim Order Outside Date"). Cash Collateral may be used during the Specified Period at the times and for the purposes identified in the cash collateral budget approved by the Requisite Plan Support Parties, a copy of which is attached hereto as Exhibit A (as may be amended as provided herein, the "Budget"). For purposes of this Interim Order, "in accordance with the Budget" or words of similar import shall mean, unless otherwise authorized by the Court or agreed to by the Requisite Plan Support Parties, compliance with the Budget such that there is no Material Adverse Variance (as defined below). As used in this Interim Order, the term "Material Adverse Variance" means an adverse variance of operating cash flow as set forth in the Budget of (a) twenty percent (20%) of the amount budgeted, on a cumulative basis, for the period from the Petition Date through the week on which such measurement is taken, if such week falls within the first four (4) weeks after the Petition Date (the "Initial Period"), and (b) in relation to any such measurement taken on any other week, fifteen percent (15%) of the amount budgeted, on a cumulative basis, for the period beginning the day immediately after the Initial Period through such other week.

4.      Budget Maintenance.   The Budget, and any modification, extension, amendment or update thereto or thereof, shall be in form and substance reasonably satisfactory to, and approved in advance in writing by, the Requisite Plan Support Parties.  Notice of any material modification, extension, amendment or update to the Budget shall be filed with the Court and served on the counsel to any Statutory Committee and the United States Trustee.

5.      Adequate Protection Liens.

(a)      As adequate protection of the interests of the Prepetition Agent and the Prepetition Secured Lenders in the Prepetition Collateral against any Diminution in Value of such Prepetition Collateral, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the

Prepetition Agent, for the benefit of itself and the Prepetition Secured Lenders, is hereby granted additional and replacement security interests in and liens (the "Adequate Protection Liens") on any and all currently owned and hereafter acquired personal property, real property and all other assets of the Debtors and their estates, together with any proceeds thereof, including, without limitation, as set forth in the Prepetition Credit Documents (collectively, the "Collateral"), having the priority set forth in Paragraph 5(b) below and which Adequate Protection Liens shall be valid, binding, enforceable and automatically perfected. From and after the date of entry of the Final Order, the "Collateral" shall also include all proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code. The Adequate Protection Liens shall secure the payment of the Prepetition Credit Obligations.

      (b)    *Priority of Adequate Protection Liens.*

      (i)    The Adequate Protection Liens shall be junior only to: (A) the Carve Out; and (B) the Permitted Prior Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

      (ii)    The Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Except as otherwise provided herein, the Adequate Protection Liens shall not be made subject to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and the Adequate

Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.

6.     Adequate Protection Superpriority Claim.

(a)     *Adequate Protection Superpriority Claim.*  As further adequate protection of the interests of the Prepetition Agent and the Prepetition Secured Lenders in the Prepetition Collateral against any Diminution in Value thereof, the Prepetition Agent and the Prepetition Secured Lenders are hereby granted an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim").

(b)     *Priority of Adequate Protection Superpriority Claim.*  The Adequate Protection Superpriority Claim shall be junior only to the Carve Out. Except for the Carve Out, the Adequate Protection Superpriority Claim shall have priority over (and shall not be *pari passu* with) all administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims become secured by a judgment or other non-consensual lien, levy or attachment.

7.     Adequate Protection Payments.  As further adequate protection, the Debtors are directed to provide adequate protection payments to the Prepetition Agent, for the

benefit of itself and the Prepetition Secured Lenders (the "Adequate Protection Payments"), in the form of: (i) payments of interest on the Prepetition Credit Obligations at the non-default rate set forth in the Prepetition Credit Agreement; and (ii) payments of the fees, costs and expenses of the Prepetition Agent and the reasonable fees and expenses of Shearman & Sterling LLP (legal professionals to the Plan Support Parties), Young Conaway Stargatt & Taylor LLP (Delaware legal professionals to the Plan Support Parties), McGuire, Craddock & Strother, P.C. (legal professionals to the Prepetition Agent) and Peter J. Solomon Company (financial professionals to the Plan Support Parties) incurred in connection with, among other things, the furtherance of the transactions contemplated by the Plan Support Agreement, in each instance, payable at the times specified in the Prepetition Credit Agreement, any applicable fee letter agreements or this Interim Order, as applicable. In addition, the Debtors shall provide continued maintenance and insurance of the Collateral in the amounts and for the risks, and by the entities, required under the Prepetition Credit Documents.

8.    Payment of Professionals to Prepetition Agent and Prepetition Secured Lenders. Professionals for the Prepetition Agent and the Prepetition Secured Lenders shall not be required to comply with the United States Trustee fee guidelines for the payment of fees and expenses. Each such professional shall provide fee and expense invoices directly to the Debtors (with copies to the United States Trustee and counsel to the Statutory Committee, if any) within five (5) days before the end of each calendar month, and the Debtors shall pay such fees and expenses within 10 days of the submission thereof, unless an objection to the payment of such fees and expenses has been raised as set forth immediately below (in which case the undisputed portion of such fees and expenses shall be paid within such ten-day period and the disputed portion of such fees and expenses shall be resolved as set forth immediately below). To the

13

extent that the Debtors, the United States Trustee, or the Statutory Committee (if any) has an objection to the fees and expenses of any such professional, they shall so advise the Case Professionals (as defined herein). If any such objection is raised and not resolved and/or withdrawn within fifteen (15) days after receipt of the fee or expense invoice (or such later date as the objecting party and the applicable professional agree), the parties shall submit the dispute to this Court for adjudication.

9. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) grant the Adequate Protection Liens and Adequate Protection Superpriority Claim; (b) permit the Debtors to perform such acts as the Prepetition Agent or Prepetition Secured Lenders may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Agent and Prepetition Secured Lenders under this Interim Order; and (d) direct the Debtors to pay, and the Prepetition Agent and Prepetition Secured Lenders to retain and apply, payments made in accordance with the terms of this Interim Order; <u>provided</u>, <u>however</u>, that any stay of relief with respect to the exercise of remedies shall be in accordance with Paragraph 15 below or as otherwise ordered by the Court.

10. <u>Perfection of Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording of any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect

14

(in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Agent and Prepetition Secured Lenders to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Agent is authorized to file, as it deems necessary or advisable, such financing statements, mortgages, notices of liens and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recording shall be necessary or required in order to create, evidence or perfect the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the Prepetition Agent all such financing statements, mortgages, title insurance policies, notices, instruments and other documents as the Prepetition Agent or the Requisite Plan Support Parties may reasonably request. The Prepetition Agent, in its sole discretion, may file a copy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

11. <u>Actual Performance Report</u>. The Debtors shall deliver to the Prepetition Agent and the Prepetition Secured Lenders and counsel to any Statutory Committee on or before the close of business on Friday of each week (and if such day is not a business day, then the next succeeding business day) (i) a comparison analysis of actual results of all items contained in the Budget for the prior week to the amounts originally contained in the Budget for such prior week and (ii) a cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally

15

contained in the Budget, in each case along with such supporting information as the Prepetition Agent and the Prepetition Secured Lenders may reasonably request (the "Actual Performance Report").

12.    Cash Management System.    The Debtors shall maintain the cash management system, in effect as of the Petition Date, subject to any provision of any cash management order reasonably satisfactory to the Debtors and the Requisite Plan Support Parties and entered by the Court.

13.    Disposition of Collateral.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the Requisite Plan Support Parties; provided, however, that the Debtors are permitted to sell, transfer, convey, assign or otherwise dispose of any Collateral constituting the sale of Inventory (as defined in the Prepetition Credit Documents) in the ordinary course of business consistent with the business practices of the previous six (6) months.

14.    Events of Default.    The occurrence of any of the following events, unless waived in writing by the Requisite Plan Support Parties, shall constitute an event of default (each, an "Event of Default"):

(a)    the incurrence by any Debtor of, or the filing by any Debtor of a motion or other request to incur, indebtedness, after the Petition Date, that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to the Prepetition Lien or the Adequate Protection Lien or (ii) entitled to priority administrative status which is equal or senior to that granted to the Prepetition Agent and Prepetition Secured Lenders herein, in each case, except for Permitted Prior Liens or as otherwise agreed in advance, in writing, by the Requisite Plan Support Parties;

16

(b) any use by any Debtor of the Cash Collateral other than as expressly authorized by this Interim Order or as otherwise agreed, in advance, in writing, by the Requisite Plan Support Parties;

(c) the entry of an order by the Court, other than this Interim Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral;

(d) reversal, vacatur, or modification (without the express prior written consent of the Requisite Plan Support Parties, in their sole discretion) of this Interim Order;

(e) dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(f) any written misrepresentation of a material fact made after the Petition Date by any of the Debtors or their agents to the Prepetition Agent or Prepetition Secured Lenders, or to agents for the Prepetition Agent or Prepetition Secured Lenders, regarding (i) the financial condition of any Debtor, (ii) the nature, extent, location or quality of any Collateral or (iii) the disposition or use of any Collateral, including Cash Collateral, including but not limited to in any Actual Performance Report, in each case upon written notice from the Requisite Plan Support Parties to the Debtors of such material misrepresentation; provided, however, that following the receipt of such notice, the Debtors shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a material misrepresentation has been made, and the decision of the Court regarding such contest shall bind the Debtors and the Requisite Plan Support Parties in all respects;

17

(g)     the sale after the Petition Date of any portion of all or any of the Debtors' assets outside the ordinary course of business without the prior written consent of the Requisite Plan Support Parties;

(h)     the failure to make Adequate Protection Payments to the Prepetition Agent and Prepetition Secured Lenders when due;

(i)     the failure by the Debtors to perform, after five-days' written notice from the Requisite Plan Support Parties, any of the material terms, provisions, conditions, covenants, or obligations under this Interim Order (other than those expressly addressed in clauses (a) through (h) in this Paragraph 14); provided, however, that failure to perform under Paragraph 11 of this Interim Order shall constitute an Event of Default for which no such notice is required; and

(j)     the occurrence of any "Termination Event" under the Plan Support Agreement.

15.     Rights and Remedies Upon Event of Default. (a) Immediately upon the occurrence, and during the continuation of, an Event of Default, the Requisite Plan Support Parties may declare a termination of the ability of the Debtors to use Cash Collateral (any such declaration, a "Termination Declaration"). The Termination Declaration shall be given by facsimile or other electronic means to counsel to the Debtors, counsel to any Statutory Committee and the United States Trustee (the earliest date on which any such Termination Declaration is made by delivery thereof shall be referred to herein as, the "Termination Declaration Date"). During the period that ends five (5) business days after the Termination Declaration Date, which period may be extended upon the written consent of the Requisite Plan Support Parties (the "Remedies Notice Period"), the Debtors may (i) request, on an emergency

18

basis, that the Court order the continued use of the Cash Collateral pursuant to the terms of this Interim Order on the basis that an Event of Default has been improperly declared hereunder or (ii) cure the applicable Event of Default, if such Event of Default arises out of subprovisions (h) or (i) of Paragraph 14 ("Curable Events of Default"). Upon an effective cure of a Curable Event of Default within the Remedies Notice Period, as confirmed in writing by the Requisite Plan Support Parties (acting reasonably), the corresponding Termination Declaration shall be deemed withdrawn and to be of no force and effect hereunder. A "Termination Date" shall be deemed to have occurred hereunder in the event that: (x) the Remedies Notice Period expires without (A) the determination of the Court during such period that the applicable Event of Default was improperly declared under the terms hereof or (B) the applicable Event of Default having been cured during such period as set forth immediately above; or (y) the Debtors lose the ability to use Cash Collateral under Paragraph 3 due to the occurrence of the Interim Order Outside Date.

   (b) Upon the occurrence of a Termination Date: (i) the automatic stay shall be lifted with respect to the Prepetition Agent and the Prepetition Secured Lenders without further notice or order; (ii) the Debtors shall no longer have the right to use Cash Collateral; and (iii) the Prepetition Agent and Prepetition Secured Lenders shall be permitted to exercise all rights and remedies set forth herein and in the Prepetition Credit Documents, as applicable, and as otherwise available at law with respect to the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to the Prepetition Agent and the Prepetition Secured Lenders with respect thereto pursuant to the Prepetition Credit

RLF1 3525498v.1

Documents or this Interim Order, as applicable. For avoidance of doubt, nothing contained in this Paragraph 15 shall reduce the availability, amount or extent of the Carve Out.

16. <u>Carve Out</u>.

(a) *Carve Out*. As used in this Interim Order, "<u>Carve Out</u>" means the following expenses: (i) statutory fees payable to the Clerk of the Court or to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) subject to the terms and conditions of this Interim Order, the allowed and unpaid fees, out-of-pocket costs and expenses for any professional retained by the Debtors pursuant to an order of the Court under sections 327 or 363 of the Bankruptcy Code (collectively, the "<u>Debtor Professionals</u>"), which fees, costs and expenses (x) are incurred prior to the business day immediately following the last day of the Specified Period (such business day, the "<u>Cutoff Date</u>") and are in accordance with the Budget or (y) constitute allowed fees, costs and expenses incurred by Debtor Professionals from and after the Cutoff Date in an aggregate amount not to exceed $1,500,000; and (iii) subject to the terms and conditions of this Interim Order, the allowed and unpaid fees, costs and expenses for any professional retained by the Statutory Committee (if any) under sections 328 or 1103 of the Bankruptcy Code (collectively, the "<u>Committee Professionals</u>"; together with the Debtor Professionals, the "<u>Case Professionals</u>"), which fees, costs and expenses (x) are incurred prior to the Cutoff Date and are in accordance with the Budget or (y) constitute allowed fees, costs and expenses incurred by Committee Professionals from and after the Cutoff Date in an aggregate amount not to exceed $100,000. Notwithstanding anything to the contrary herein, the Carve Out shall be senior in priority to the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claim. No payment of any Carve Out amount shall reduce the amount of the Prepetition Credit Obligations.

20

(b) *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The Prepetition Agent and the Prepetition Secured Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code unless the Prepetition Agent or the Prepetition Secured Lenders have possession of the Cash Collateral and apply it in a manner that is not permitted by this Interim Order without honoring the Carve Out provided for herein. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition Agent or the Prepetition Secured Lenders in any way to compensate or reimburse any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (ii) to increase the Carve Out if actual allowed fees, costs and expenses of any Case Professional are higher than as reflected in the Budget, subject to the variance permitted pursuant to Paragraph 3, (iii) as consent to the allowance of any professional fees or expenses of any Case Professional or (iv) to affect the right of the Debtors, the Prepetition Agent or Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses.

17. <u>Limitations on the Cash Collateral and the Carve Out</u>. The Cash Collateral and the Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Prepetition Agent, the Prepetition Secured Lenders, or their respective rights and remedies under the Prepetition Credit Documents or this Interim Order, including, without limitation, for the payment for any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other

21

contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief adverse to the interests of the Prepetition Agent, the Prepetition Secured Lenders, or their rights and remedies under the Prepetition Credit Documents or this Interim Order, (ii) invalidating, setting aside, recharacterizing, avoiding or subordinating, in whole or in part, the Prepetition Credit Obligations, (iii) for monetary, injunctive or other affirmative relief against the Prepetition Agent or any Prepetition Secured Lender that would impair the ability of the Prepetition Agent or Prepetition Secured Lenders to recover on the Prepetition Credit Obligations or seeking affirmative relief against them, (iv) preventing, hindering or otherwise delaying the exercise by the Prepetition Agent or Prepetition Secured Lenders of any rights and/or remedies under this Interim Order, or (v) objecting to the confirmation of the Plan (as defined below) (or any aspect of the Plan) or seeking to hinder any transaction contemplated by the Plan Support Agreement, if such objection or act to hinder is filed or caused (directly or indirectly) by the Debtors; (b) to make any distribution under any plan of reorganization sponsored by the Debtors in any of the Cases (except as expressly contemplated in the Plan); (c) to make any payment not contemplated by the Budget or Orders entered by the Court (including, without limitation, the Orders entered by the Court with respect to "first day" motions) in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without the prior written consent of the Requisite Plan Support Parties; or (d) subject to Paragraph 15 above, to object to, contest, or interfere with in any way the enforcement or realization upon any of the Collateral once an Event of Default has occurred by the Prepetition Agent or, subject to the Prepetition Credit Documents, the applicable Prepetition Secured Lenders. Notwithstanding the foregoing, the Cash Collateral and the Carve Out may be used in an amount not to exceed $25,000 in the aggregate for Allowed

Professional Fees incurred by the Statutory Committee to investigate the validity, enforceability, perfection, priority or extent of the Prepetition Credit Obligations, the Prepetition Liens and/or a potential Challenge (as defined herein). As used herein, the term "Plan" shall mean the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, substantially in the form attached as **Exhibit A** to that certain Disclosure Statement, dated December 4, 2009, of the Debtors.

18.     Reservation of Certain Statutory Committee and Third Party Rights and Bar of Challenges and Claims. Subject to Paragraph 17 above and this Paragraph 18, nothing contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall prejudice the rights of a Statutory Committee and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court (other than the Debtors) (a "Party in Interest With Standing") to seek to avoid, object to or otherwise challenge the Debtors' Stipulations regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agent and the Prepetition Secured Lenders or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Credit Obligations. Subject to the entry of the Final Order, any Statutory Committee, if appointed, or any Party in Interest With Standing must commence, as appropriate, a contested matter or adversary proceeding raising a claim, objection, defense, or other challenge, including, without limitation, any claim against the Prepetition Agent or the Prepetition Secured Lenders, in the nature of a setoff, counterclaim or defense against or to the Prepetition Credit Obligations (each, a "Challenge") before the earlier of (i) the seventieth (70th) calendar day after the date of entry of this Interim Order and (ii) the date by which objections to the confirmation of the Plan are required to be filed (the "Challenge Period"). Upon the expiration of the Challenge Period,

23

without the filing of a Challenge (or if any such Challenge is filed and overruled): (A) any and all such Challenges by any party (including, without limitation, the Statutory Committee, any Party in Interest With Standing, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released and barred; and (B) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Agent's and each Prepetition Secured Lender's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, equity holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases. For the avoidance of doubt, any Prepetition Secured Lender receiving or accepting repayment of any portion of the Prepetition Credit Obligations on or after the Petition Date will be deemed subject to the jurisdiction of this Court in the event that disgorgement is required in accordance with this Paragraph 18, but the Prepetition Agent shall not have any liability for any amounts paid to a Prepetition Secured Lender in accordance with this Interim Order. For purposes of this Paragraph 18, any trustee appointed or elected in these Chapter 11 Cases shall, for the duration of the investigation period described herein, and thereafter for the duration of any litigation timely commenced by the filing of a complaint described herein (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party "other than the Debtors."

19. <u>Plan Sale</u>. In the event that the Prepetition Collateral is sold or otherwise disposed of pursuant to a chapter 11 plan, the Debtors shall not seek confirmation of such plan under section 1129(b)(2)(A) of the Bankruptcy Code in relation to the class of claims that

24

includes the Prepetition Credit Obligations, other than pursuant to 1129(b)(2)(A)(ii) of the Bankruptcy Code.

20. <u>No Third Party Rights</u>. Except as expressly provided for herein and except for the Carve Out, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

21. <u>Section 506(c) Claims</u>. Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Prepetition Agent or any Prepetition Secured Lender or any of their respective claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

22. <u>No Marshaling/Applications of Proceeds</u>. The Prepetition Agent and the Prepetition Secured Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, as the case may be, and proceeds thereof shall be received and applied in accordance with this Interim Order notwithstanding any other agreement or provision to the contrary.

23. <u>Section 552(b)</u>. Upon entry of the Final Order, the Prepetition Agent and the Prepetition Secured Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Agent or Prepetition Secured Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

24. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of: (a) the

25

Prepetition Agent's or any Prepetition Secured Lender's right to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); (b) any of the rights of the Prepetition Agent or any Prepetition Secured Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with expanded power, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Debtors, the Prepetition Agent and Prepetition Secured Lenders are preserved.

25. <u>No Waiver by Failure to Seek Relief</u>. The failure of the Prepetition Agent or any Prepetition Secured Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Agent or such Prepetition Secured Lender.

26. <u>Proofs of Claim</u>. Upon entry of the Final Order, the Prepetition Agent and Prepetition Secured Lenders will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein, and the Debtors' Stipulations in Paragraph F above shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent and the Prepetition Secured Lenders for all amounts owed in respect of the Prepetition Credit Obligations. Notwithstanding any order entered by the Court in relation to the

RLF1 3525498v.1

establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Agent, for the benefit of itself and the Prepetition Secured Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein.

27. <u>Good Faith</u>. The Prepetition Agent and Prepetition Secured Lenders each have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.

28. <u>Binding Effect of Interim Order</u>. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Agent, the Prepetition Secured Lenders, all other creditors of any of the Debtors, any Statutory Committee or any other Court-appointed committee appointed in any of the Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case. In the event of any inconsistency between the provisions of this Interim Order and the Prepetition Credit Documents or any other order (including any "first day" order), the provisions of this Interim Order shall govern and control. Any payments to be made under any order (including any "first day" order) shall be made in accordance with this Interim Order and the Budget.

29. <u>No Modification of Interim Order</u>. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the Requisite Plan Support Parties. In the event any or all of the provisions of

27

this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any lien, claim or priority authorized or created hereby. Any liens or claims granted to the Prepetition Agent and the Prepetition Secured Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

30. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; (d) discharging any Debtor; or (e) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Agent and the Prepetition Secured Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and such claims, liens and security interests shall maintain their priority as provided by this Interim Order until all Prepetition Credit Obligations have been indefeasibly paid in full in cash, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use Cash Collateral.

RLF1 3525498v.1

31. <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order is scheduled for _February 8_, 2010 at _10:30_.m. (prevailing Eastern time) before the Honorable _Brendan L. Shannon_, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware. On or before _January 14_, 2010, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party that has filed prior to such date a request for notices with the Court; (c) counsel for any Statutory Committee; (d) the Debtors' consolidated thirty (30) largest unsecured creditors of the Debtors on a consolidated basis; and (e) all other secured creditors of record. The Final Hearing Notice shall state that any party in interest objecting to entry of the proposed Final Order shall file written objections with the Clerk of the Court by no later than _February 1_, 2010 at 4:00 p.m. (prevailing Eastern time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, attn: Daniel J. DeFranceschi, Esq. and Paul N. Heath, Esq., Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Square, Wilmington, DE 19801; (ii) special counsel to the Debtors, attn: Steven D. Pohl, Esq., Mary D. Bucci, Esq. and Tally M. Wiener, Esq., Brown Rudnick LLP, One Financial Center, Boston, MA 02111; (iii) counsel to any Statutory Committee; (iv) counsel to the Prepetition Agent, attn: Jonathan Thalheimer, Esq., McGuire, Craddock & Strother, P.C., 500 North Akard, Suite 3550, Dallas, TX 75201; (v) the Office of the United States Trustee for the District of Delaware, attn: David Klauder, Esq., 844 King Street, Suite 2207, Wilmington, Delaware 19801; and (vi) counsel to the Prepetition Secured Lenders, attn: Andrew V. Tenzer, Esq. and Michael H. Torkin, Esq., Shearman & Sterling LLP, 599 Lexington Ave., New York, NY 10022, and attn: Pauline K. Morgan, Esq. and Edmon L.

Morton, Esq., Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 100 West Street, 17th Floor, Wilmington, DE 19801.

32.     Effect of this Interim Order.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

33.     Retention of Jurisdiction.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated:  January 12, 2010
        Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

30