# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAIGHTS CROSS COMMUNICATIONS, INC., et al., | ) Case No. 10-10062 (BLS) |
| | ) Jointly Administered |
| Debtors.[1] | ) |
| | ) Obj. Deadline: February 1, 2010 at 4:00 p.m. (EST) |
| | ) Hearing Date: February 8, 2010 at 10:30 a.m. (EST) |

## APPLICATION OF THE DEBTORS TO RETAIN AND EMPLOY HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISORS AND INVESTMENT BANKERS

The above-captioned debtors (the "Debtors") hereby apply to the Court for entry of an order pursuant to sections 327(a) and 328(a) of Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") seeking the entry of an order authorizing the Debtors to retain and employ the investment banking firm Houlihan Lokey Howard & Zukin Capital, Inc., together with its subsidiaries' agents or independent contractors (collectively, "Houlihan Lokey") nunc pro tunc as of January 11, 2010 (the "Petition Date") under the terms of the letter dated as of December 4, 2009 (the "Engagement Agreement"), which is effective as of January 22, 2009 (the "Effective Date") and supersedes any previous engagement agreement among the Debtors and Houlihan Lokey, which Engagement Agreement is attached hereto as Exhibit A. In

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Haights Cross Communications, Inc. (7398), Haights Cross Operating Company (7416), Triumph Learning, LLC (7400), Recorded Books, LLC (7163) and SNEP, LLC (f/k/a Sundance/Newbridge Educational Publishing, LLC) (1159). The address for each of the Debtors solely for purposes of notices and communications is 10 New King Street, Suite 102, White Plains, NY 10604.

support of this Application, the Debtors submit the Declaration of John-Paul Hanson (the "Declaration"), attached hereto as Exhibit B; and further respectfully state as follows:

## Background

The Debtors are leading developers and publishers of products for the Kindergarten through Grade 12 education and public library markets. Their products include state-specific test preparation materials, skills assessment and intervention books and unabridged audiobooks, and are sold primarily to schools and public libraries. The corporate history and organizational structure of the Debtors are set forth in detail in paragraphs 15 - 20 of the Crecca Declaration.

The Debtors' capital structure includes long term funded debt consisting of principal (excluding accrued and unpaid interest) in the amount of:

- $108,200,000 in aggregate amount of term loans drawn and outstanding under the Prepetition Credit Agreement (the "Prepetition Credit Facility");
- $138,800,000 11 ¾% unsecured Senior Notes due 2011 (the "Senior Notes") issued by Haights Cross Operating Company ("HCOC"); and
- $135,000,000 12 ½% unsecured Senior Discount Notes due 2011 (the "Senior Discount Notes") issued by Haights Cross Communications ("HCC").

The Prepetition Credit Agreement included financial covenants that projected certain levels of growth in the Debtors' business, based on information available in August 2008. Subsequent to August 2008, the worldwide financial turmoil and associated economic downturn resulted in the curtailment, delay or reduction in federal, state and local government funding available to schools, public libraries and other purchasers of the Debtors' products. Despite the Debtors' adoption of aggressive costs savings initiatives to mitigate decreases in revenue, the Debtors inability to assure compliance with these covenants throughout 2009 caused the Debtors' certified financial accountants to issue the Debtors a "going concern" opinion in the

Spring of 2009. The receipt of this qualified opinion constituted a default under the Prepetition Credit Agreement. The Debtors subsequently entered into various forbearance agreements with their lenders, which among other things prohibited the Debtors from making any interest payments on the Senior Notes and Senior Discount Notes while the default remained under the Prepetition Credit Agreement. The failure to make interest payments on the Senior Notes and Senior Discount Notes in August 2009 constituted a default under each of the respective indentures. Ultimately, the Debtors were unable to reach an out-of-court agreement to alleviate the defaults under the Prepetition Credit Agreement, Senior Notes and Senior Discount Notes.

The Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), as proposed, would restructure and reduce the Debtors' outstanding principal indebtedness from over $380,000,000 to approximately $180,000,000 of new secured term debt and extend the maturity of the debt until no earlier than three years from the effectiveness of the Plan. It is intended to substantially reduce the Debtors' outstanding indebtedness and improve cash flows, including cash flows available for investing in the Debtors' product offerings.

On September 3, 2009, the Debtors and parties holding or controlling 100% of the outstanding principal amount under the Prepetition Credit Agreement, approximately 80% of the outstanding principal amount of the Senior Notes and approximately 13% of the outstanding principal amount of the Senior Discount Notes (collectively, the "Requisite Plan Support Parties") entered into a plan support agreement (the "Plan Support Agreement"), which, subject to certain conditions, required, among other things, the Debtors to effectuate, and the Requisite Plan Support Parties to support, the Plan.

The Debtors believe that the Plan reflects an appropriate resolution of all claims against and equity interests in the Debtors that is in the best interests of the Debtors and their estates, taking into account both the valuation of the Debtors and the differing nature and priorities of such claims and interests. Upon emergence, the Debtors are anticipated to have a stronger balance sheet and be in a superior competitive position than before, which will redound to the benefit of the Debtors, their employees, customers, vendors and other parties in interest.

To achieve an efficient and beneficial financial restructuring, the Debtors conducted a pre-filing solicitation of their Plan, which was then overwhelmingly accepted by the creditors entitled to vote on the Plan. Only three classes of claims and one class of interests are impaired under the Plan: (i) Class 2 – Secured Credit Agreement Claims, (ii) Class 4 – Senior Note Claims, (iii) Class 5 – Senior Discount Note Claims and (iv) Class 9 – Prepetition Holdings Equity Interests. The only classes that were entitled to vote on the Plan were (i) Class 2 – Secured Credit Agreement Claims, (ii) Class 4 – Senior Note Claims and (iii) Class 5 – Senior Discount Note Claims. Holders of interests in Class 9 – Prepetition Holdings Equity Interests are not receiving any distributions or retaining any interests under the Plan and, therefore, are deemed to have rejected the Plan and were not entitled to vote thereon.

The Debtors engaged Globic Advisors, Inc. (the "Voting Agent") to act as their voting and solicitation agent for purposes of distributing the Disclosure Statement and Ballots and calculating and tabulating votes on the Plan. On or about December 4, 2009, the Debtors caused the Voting Agent to commence the distribution of copies of the Disclosure Statement, the Plan and Ballots to each person or entity (or their nominee) that was a beneficial holder of a Prepetition Credit Agreement Claim, a Senior Note Claim or a Senior Discount Note Claim as of

December 4, 2009, the voting record date. The Debtors established January 4, 2010 as the deadline by which completed Ballots had to be received by the Voting Agent.

As of the voting deadline, all or a vast majority of the creditors in each of the three classes entitled to vote on the Plan voted to accept the Plan. Accordingly, the Debtors submit that the requirements set forth in the Bankruptcy Code with respect to the solicitation of votes to accept a plan have been satisfied.

On the Petition Date, the Debtors filed with this Court the Disclosure Statement and the Plan, together with the certified results of the pre-bankruptcy solicitation as set forth in the voting affidavit submitted by the Voting Agent. By separate motion filed on the Petition Date, the Debtors have requested that this Court set February 24, 2010 for a hearing to approve the Disclosure Statement and the prepetition solicitation procedures and to confirm the Plan.

## The Debtors' Desire to Retain Houlihan Lokey

Prior to the Petition Date, the Debtors experienced, and continue to experience, financial difficulties that culminated in the filing of these chapter 11 cases. The Debtors have determined, in the exercise of their business judgment, that the size of their business operations, and the complexity of the financial difficulties attendant upon operations of such scope, require them to employ experienced professionals to render financial advisory services in connection with their chapter 11 cases.

## Basis for Relief

The Debtors desire to employ Houlihan Lokey as their financial advisor and investment banker during the pendency of these cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 and to obtain approval of the terms under which Houlihan Lokey will be compensated. Additionally, pursuant to Local Rule 2016-

-5-

RLF1 3530416v.1

2(g) the Debtors request a modification of the application and information requirements contained in Local Rule 2016-2.

>Bankruptcy Code section 327(a) provides, in relevant part, as follows:
>
>>The trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>>11 U.S.C. § 327(a).
>
>Bankruptcy Code section 328(a) provides, in relevant part, as follows:
>
>>The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.
>>11 U.S.C. § 328(a).
>
>Bankruptcy Rule 2014 provides, in relevant part, as follows:
>
>>An order approving the employment of financial advisors . . . or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.
>>Fed. R. Bankr. P. 2014.

### Houlihan Lokey's Qualifications

As described further herein, pursuant to the Engagement Agreement, Houlihan Lokey commenced its engagement on the Effective Date with the Debtors to provide certain financial advisory and investment banking advice. On December 4, 2009, Houlihan Lokey and the
-6-

RLF1 3530416v.1

Debtors executed the Engagement Agreement, which supersedes any previous engagement agreement among the Debtors and Houlihan Lokey.

Established in 1970, Houlihan Lokey is an international investment banking/financial advisory firm with fourteen offices in the United States, Europe and Asia and more than eight hundred employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A advisor for U.S. transactions under $2 billion, according to Thomson Reuters. The firm is one of the leading providers of M&A fairness opinions and has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

Houlihan Lokey is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority, as well as in all 50 states and U.S. territories, and the District of Columbia.

Houlihan Lokey and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Houlihan Lokey's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations. The professionals of Houlihan Lokey have been employed as investment bankers and/or financial advisers to the debtors in a number of large restructuring situations, including the following chapter 11 cases: In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009); In re Foamex International Inc., Case No. 09-10560 (KJC) (Bankr. D. Del. Feb. 18, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re Granite Broadcasting, Corp., Case No. 06-12984 (ALG) (Bankr. S.D.N.Y. Dec. 12, 2006); In re McLeodUSA, Inc., Case No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y.

June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec.12, 2002); In re Covad Communications Group, Inc., Case No. 01-10167 (PJW) (Bankr. D. Del. Aug. 20, 2001); In re Ameriserve Food Dist., Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. Feb. 11, 2000); In re Stage Stores Inc., Case No. 00-35078 (WWS) (Bankr. S.D. Tex. June 9, 2002); In re Purina Mills. Inc., No. 99-3938 (SLR) (D. Del. Oct. 29, 1999). In addition, Houlihan Lokey has been involved in restructuring matters while representing official creditors committees including: In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 29, 2009); In re WCI Communities Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 4, 2008); In re SemGroup LP, Case No. 08-11525 (BLS) (Bankr. D. Del. July 22, 2008); In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008 and Dec. 17, 2008); In re Delta Air Lines Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 05, 2005); In re Refco Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Nov. 23, 2005); In re Solutia, Inc., Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Dec. 17, 2003); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 7, 2002); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 1, 2002).

  The Debtors have selected Houlihan Lokey as their investment banker and financial advisor based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the restructuring, and (b) Houlihan Lokey's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases. As mentioned, on the Effective Date (which was prior to the Petition Date), the Debtors engaged Houlihan Lokey to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization, and/or recapitalization and, if necessary, to prepare for the Debtors' commencement of chapter 11 cases.

  In providing prepetition services to the Debtors in connection with these matters, Houlihan Lokey's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' financial history, debt

structure, creditors, business and operations, and related matters. Accordingly, Houlihan Lokey has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

An experienced financial advisor and investment banker such as Houlihan Lokey fulfills a critical need. The Debtors believe they require the services of a capable and experienced financial advisory and investment banking firm such as Houlihan Lokey because, among other reasons, Houlihan Lokey's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in these cases. Should the Court approve the Debtors' retention of Houlihan Lokey as investment bankers, Houlihan Lokey will continue, without interruption, to perform the services for the Debtors as described herein.

### Services to be Provided by Houlihan Lokey

As described in the Engagement Agreement, Houlihan Lokey will provide such consulting and advisory services as Houlihan Lokey and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including but not limited to the following:

> assisting the Debtors in the development, preparation and distribution of selected information, documents and other materials in an effort to enable the consummation of any Transactions (as defined in the Engagement Agreement);
>
> soliciting and evaluating indications of interest and proposals regarding any Transactions from current and/or potential lenders, equity investors, acquirers and/or strategic partners;
>
> assisting the Debtors with the development, structuring and implementation of any Transactions, including participating as a representative of the Debtors in meetings with creditors and other parties involved in any transactions;
>
> assisting the Debtors in valuing the Debtors' assets and/or operations;
>
> providing expert advice and testimony regarding financial matters related to any Transactions;

advising and attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties; and

providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Debtors.

The Plan Support Agreement places certain obligations on the Debtors, such as taking all steps reasonably necessary to confirm the plan. Consequently, during the term of the Plan Support Agreement, the services listed above will be limited in scope to conform to the Debtors' obligations under the Plan Support Agreement.

## Disclosure Concerning Disinterestedness

In reliance on the Declaration, the Debtors believe that, except as set forth in the Declaration, (a) Houlihan Lokey has no connection with the Debtors, their creditors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (b) Houlihan Lokey is not a creditor, equity security holder or insider of the Debtors; (c) Houlihan Lokey is not and was not, within two years of the Petition Date, a director, officer or employee of the Debtors; and (d) Houlihan Lokey does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtors or for any other reason. Accordingly, the Debtors believe that Houlihan Lokey is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. Moreover, the Debtors believe that the retention and employment of Houlihan Lokey is necessary and in the best interests of the Debtors and their estates.

**Compensation and Fee Applications**

Subject to Court approval, and in accordance with section 327(a) and 328(a) of the Bankruptcy Code, compensation will be payable to Houlihan Lokey in the following manner:

> *Monthly Fees*: Monthly Fee (as defined in the Engagement Agreement) of $200,000 per month. Houlihan Lokey agrees that it will credit twenty-five percent (25%) of the Monthly Fees received during months 4 through 6 from the Effective Date and fifty percent (50%) of the Monthly Fees received thereafter against the Transaction Fees (as defined in the Engagement Agreement) in excess of $1,000,000 to which Houlihan Lokey becomes entitled (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fees be reduced below zero.
>
> Reimbursement for all fees, reasonable disbursements and reasonable out-of-pocket expenses, including (i) reasonable fees of Houlihan Lokey's counsel, and (ii) reasonable disbursements of Houlihan Lokey's documented and travel expenses, duplicating charges, computer charges, messenger services and long-distance telephone calls.
>
> *Restructuring Transaction Fee*: Upon the date of confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code pursuant to an order of the applicable bankruptcy court that restructures the Restructured Securities (as defined in the Declaration) into restructured debt and equity or a recapitalization or restructuring pursuant to section 363 sale under the Bankruptcy Code, then Houlihan Lokey shall earn, and the Company shall promptly pay in cash to Houlihan Lokey a Restructuring Transaction Fee (as defined in the Engagement Agreement) of one percent (1.00%) of the principal amount including accrued but unpaid interest of any and all indebtedness of the Company that is cancelled and/or restructured.
>
> *Restructuring Transaction Work Fee*: Notwithstanding anything to the contrary in the immediately preceding paragraph, it is understood and agreed that the Company solicited votes from the holders of the Senior Notes and the Senior Discount Notes (collectively, the "Notes") pursuant to the exemption provided by Section 3(a)(9) of the Securities Act of 1933, as amended, and that this solicitation (the "Notes Solicitation") constitutes a Section 3(a)(9) Transaction. In connection therewith, Houlihan Lokey will be paid a Restructuring Transaction Work Fee (as defined in the Engagement Agreement) in cash of $3,025,000 in lieu of a Restructuring Transaction Fee in connection with the restructuring of the Notes. Such Restructuring Transaction Work Fee will be reduced by any Financing Transaction Fee (as defined in the Engagement Agreement) earned in connection with a rights offering to existing security holders contemplated by the terms of the Company's Plan Support Agreement (as

defined in the Engagement Agreement) dated September 3, 2009 (as amended). The Restructuring Transaction Fee in respect of the Company's Secured Debt shall remain unchanged. The Restructuring Transaction Work Fee will be payable on the earlier to occur of 180 days after the commencement of the solicitation or the effective date of the Plan. The Restructuring Transaction Work Fee will be subject to offset for the Monthly Fees to the same extent as the Restructuring Transaction Fee as provided in Section 25(a) above.

For the avoidance of doubt, as the Notes Solicitation (as defined in the Engagement Agreement) was effectuated pursuant to Section 3(a)(9), per the terms of the Engagement Agreement upon confirmation of the Plan, Houlihan Lokey would be entitled to the Restructuring Transaction Work Fee.

In the event that the Plan is confirmed, Houlihan Lokey expects the total fees to be as follows: (i) aggregate Monthly Fees of $413,333, excluding amounts paid prior to the Petition Date, (ii) Restructuring Transaction Fee of $335,158 net of credits, as described above, and (iii) the Restructuring Transaction Work Fee of $3,025,000.

The overall compensation structure described above is comparable to compensation generally charged by investment banking firms of similar stature to Houlihan Lokey for comparable engagements, both in and out of the context of chapter 11 reorganizations. Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were important factors in Houlihan Lokey's determination of the amount of its fees. In addition, the Debtors believe that the ultimate benefit to the Debtors of Houlihan Lokey's services hereunder cannot be measured merely by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of services.

-12-

RLF1 3530416v.1

The Debtors propose that, except as described below, all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code, as incorporated in sections 329 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of the Court, and will not be subject to the standard of review in section 330 of the Bankruptcy Code. Notwithstanding the proposal that Houlihan Lokey's retention be pursuant to section 327 of the Bankruptcy Code and the terms of its engagement under section 328(a) of the Bankruptcy Code, the United States Trustee (the "U.S. Trustee") shall be permitted to review the Restructuring Transaction Fee and the Restructuring Transaction Work Fee (collectively, the "Transaction Fees") (but not the Monthly Fees in the event such fees are credited against the Transaction Fees) pursuant to the reasonableness standards set forth in section 330 of the Bankruptcy Code; provided, however, that in determining the reasonableness of the Transaction Fees under section 330, a factor to be considered is whether the Transaction Fees are comparable to the range of fees paid to investment bankers in comparable transactions both in and outside of court in this and other Districts as provided in section 330(a)(3)(F) of the Bankruptcy Code; and provided, further, that the number of hours spent by Houlihan Lokey's personnel during its engagement or during any given monthly period thereof shall not be the sole factor in and of itself as to the reasonableness of the Transaction Fees or the Monthly Fee. Neither the U.S. Trustee nor Houlihan Lokey shall rely upon this provision as binding precedent in any other chapter 11 proceedings.

### **Modification of Local Rule 2016-2(d)**

Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Further, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries which set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity

(in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause.

The Debtors submit that the requirements of Local Rule 2016-2(d) should be modified for Houlihan Lokey due to the nature of Houlihan Lokey's engagement and its compensation structure. Houlihan Lokey has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees, including the Monthly Fees and the Transaction Fee (if any), on a fixed-rate basis which, as set forth above, is customary in the investment banking and financial advisory services industry. As such, the submission of detailed time entries pursuant to Local Rule 2016-2(d) is unnecessary, and the Debtors request a modification of such reporting requirements.

Notwithstanding the terms of the Engagement Agreement, the Debtors propose that Houlihan Lokey will file interim and final fee applications as required by the Local Rules and Order of this Court, including detailed descriptions of the expenses for which Houlihan Lokey has requested reimbursement, but Houlihan Lokey will only provide reasonable descriptions of the work it has performed in one hour increments. Additionally, Houlihan Lokey will submit a separate application to this Court for approval of any Transaction Fee (as defined in the Engagement Agreement), if and when such fees become payable. Alternatively, Houlihan Lokey may combine any request for payment of the Transaction Fee in these cases with its interim or final fee applications.

Based on the foregoing, the Debtors request a modification of the informational requirements of Local Rule 2016-2(d).

### Disclosure of Compensation

As of the Petition Date, the Debtors have paid Houlihan Lokey $1,895,253.21 for prepetition fees and reimbursable expenses, including: $1,875,000 in total fees incurred

prepetition for services rendered; and $20,253.21 in total amounts reimbursed for necessary expenses prepetition.

To the best of the Debtors' knowledge, and except as disclosed in the Declaration, Houlihan Lokey has not provided services to the Debtors' creditors, equity security holders, or any other parties-in-interest, or its respective attorneys, in any matter relating to the Debtors or their estates.

The Debtors respectfully request that Houlihan Lokey be retained <u>nunc pro tunc</u> to the Petition Date. Since the Petition Date, Houlihan Lokey has provided valuable services that were time-sensitive and critical to the estate and maximizing value of the assets of the estate.

### **<u>Indemnification</u>**

The Engagement Agreement provides for indemnity of Houlihan Lokey by the Debtors. See Engagement Agreement, Indemnification Provisions. Notwithstanding the indemnification provisions set forth in the Engagement Agreement, such indemnity is modified, to the extent necessary, by the proposed order on this Application as follows (the "<u>Modified Indemnification Provisions</u>"):

> subject to the provisions of subparagraph (c), <u>infra</u>, the Debtors are authorized to indemnify, and shall indemnify, Houlihan Lokey in accordance with the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Houlihan Lokey's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Bankruptcy Court;

> notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Houlihan Lokey or provide contribution or reimbursement to Houlihan Lokey (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Houlihan Lokey's bad faith, self dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Houlihan Lokey's contractual obligations unless the Court

determines that indemnification, contribution, or reimbursement would not be prohibited by <u>In re United Artists Theatre Company, et al.</u>, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c) <u>infra</u>, to be a claim or expense for which Houlihan Lokey should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement, as modified by this Order;

if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Houlihan Lokey believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, including without limitation the advancement of defense costs, Houlihan Lokey must file an application therefore in this Court, and the Debtors may not pay any such amounts to Houlihan Lokey before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by Houlihan Lokey and not a provision limiting the duration of the Debtors' obligation to indemnify Houlihan Lokey; and

any limitation on liability pursuant to the terms of the Engagement Agreement shall be eliminated.

The Debtors and Houlihan Lokey believe that the Modified Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings. <u>See, e.g.</u>, <u>In re Foamex Int'l Inc.</u>, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 18, 2005) (order authorizing retention of Miller Buckfire on similar terms); <u>In re Comdisco, Inc.</u>, Case No. 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); <u>In re United Artists Theatre Co.</u>, Case No. 00-3514 (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey by debtors); <u>In re Joan & David Halpern, Inc.</u>, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000). The modified Indemnification Provisions are similar to other

indemnification provisions that have been approved by bankruptcy courts in this and other districts. See, e.g., In re Burlington Indus., Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of Miller Buckfire on similar terms); In re PC Landing Corp., Case No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002) (same); In re Metrocall, Inc., Case No. 02-11579 (RB) (Bankr. D. Del. Jul. 8, 2002) (order authorizing retention of Lazard Freres & Co. LLC under similar terms); In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (same); In re W.R. Grace & Co., Case No. 01-01139 (JJF) (Bankr. D. Del. Jun. 22, 2001) (order authorizing retention of Blackstone Group under terms of engagement letter, including, among other things, indemnification provisions similar to the Indemnification Provisions).

## Notice

Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty largest unsecured creditors on a consolidated basis; (c) counsel to the agent bank for the Prepetition Lenders; (d) the Debtors' prepetition indenture trustees; (e) the Securities Exchange Commission; (f) the Internal Revenue Service; and (g) those parties who have requested notice pursuant to Bankruptcy Rule 2002. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors' retention of Houlihan Lokey substantially in the form annexed hereto as Exhibit C and (ii) granting such other and further relief to the Debtors as the Court may deem proper.

-17-

RLF1 3530416v.1

Dated: January 21, 2010  
       New York, New York

Respectfully submitted,

_____  
Paul J. Crecca  
Chief Executive Officer