# EXHIBIT A

**Engagement Agreement**

HOULIHAN LOKEY HOWARD & ZUKIN

INVESTMENT BANKING SERVICES

www.hlhz.com

*Confidential*

As of January 22, 2009

Brown Rudnick LLP
One Financial Center
Boston, MA 02111
Attn: Philip J. Flink, Esq.

Dear Phil:

This letter agreement (this "Agreement") is entered into as of December 4, 2009, amends and restates in its entirety that certain letter agreement among the parties hereto entered as of August 28, 2009, effective as of the January 22, 2009 (the "Effective Date"), and confirms the terms under which Brown Rudnick LLP , in its capacity (in such capacity, "Brown Rudnick") as counsel to Haights Cross Communications, Inc., and each of its direct and indirect subsidiaries (collectively, the "Company") has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the Effective Date, as its exclusive financial advisor to provide financial advisory and investment banking services in connection with one or more bank amendments, debt exchanges, other capital structure restructuring transactions, a financial restructuring and/or reorganization of the Company and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement. For the avoidance of doubt, this Agreement does not cover merger and acquisition (including sales) transactions involving the Company or any of its direct or indirect subsidiaries or business units.

1.  **Services.** In connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise the Brown Rudnick with the analysis, evaluation, pursuit and effectuation of any such Transaction. Houlihan Lokey's services will consist of, if appropriate and if requested by Brown Rudnick, (i) assisting Brown Rudnick in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), including, if appropriate, advising Brown Rudnick in the preparation of an information memorandum; (ii) soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current or prospective lenders, bondholders and/or other parties interested in providing financing to the Company (collectively, "Investors"); (iii) assisting Brown Rudnick with the development, structuring, negotiation and implementation of any Transaction(s), including participating

as a representative of Brown Rudnick in negotiations with creditors and other parties involved in any Transaction(s); (iv) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; (v) advising and attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as Brown Rudnick and Houlihan Lokey determine to be necessary or desirable; and (vi) providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and Brown Rudnick. Notwithstanding the foregoing, in the event the Company determines to engage in either a Senior Note Exchange Transaction (defined below), a Discount Note Exchange Transaction (defined below) or a Restructuring Transaction (defined below) intended to comply with the requirements of Section 3(a)(9) of the Securities Act of 1933, as amended (the "Securities Act"), Houlihan Lokey shall not directly or indirectly engage in the solicitation of any securities holders in connection with such Transaction(s), or take any other action that would cause the Transaction(s) to fail to meet the requirements for an exemption from the registration requirements of Section 5 of the Securities Act provided by Section 3(a)(9) of the Securities Act, including, without limitation: (i) express any opinion or convey any of management's opinions, recommendations or assessments of a Transaction(s) to any person in violation of Section 3(a)(9) of the Securities Act, or (ii) provide dealer-manager, placement agent or marketing services. Houlihan Lokey further agrees to comply in all material respects with all laws in connection with the performance of services under this Agreement.

Houlihan Lokey understands that, as part of this engagement, Houlihan Lokey will provide assistance to Brown Rudnick in connection with legal advice to be rendered by Brown Rudnick to the Company. In connection with such services, it may be necessary for Brown Rudnick to disclose to Houlihan Lokey certain of its legal analyses, as well as other privileged information and attorney work product, and for the Company, its employees, representatives or agents to disclose to Houlihan Lokey other confidential information. In connection with such assistance to Brown Rudnick, Houlihan Lokey agrees that all communications between Houlihan Lokey and Brown Rudnick, as well as any communications between Houlihan Lokey and the Company, or any attorney, agent, officer or employee acting on the Company's behalf, shall be regarded as confidential and made solely for the purpose of assisting Brown Rudnick in rendering legal advice to the Company in connection with this engagement. Houlihan Lokey agrees not to disclose, or permit the reproduction or transmission of, without Brown Rudnick's and the Company's prior written permission, (1) any oral or written communication with Brown Rudnick or with the Company, its employees, representatives or agents, in the course of this engagement or (2) any information or documents within Houlihan Lokey' possession, custody or control which have been disclosed or provided to Houlihan Lokey (including, but not limited to information or documents provided to Houlihan Lokey by Brown Rudnick or the Company, its employees, representatives or agents) or generated or prepared by or for Houlihan Lokey in connection with this engagement. The foregoing, of course, is subject to the operation of law in any court of competent jurisdiction. For avoidance of doubt, all documents and other materials generated or prepared by or for Houlihan Lokey in connection with services under this engagement shall be considered privileged and confidential attorney work product.

2. **Exclusive Agency.** In the event the Company or its management or board of directors, or to the Company's knowledge its controlling equity holders, receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist Brown Rudnick and the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

Notwithstanding the Company's obligations hereunder, including, but not limited to, its obligation to pay the fees and expenses of Houlihan Lokey and to indemnify Houlihan Lokey, it is understood and agreed that Houlihan Lokey's sole and exclusive client is Brown Rudnick, on behalf of the Company, and Houlihan Lokey will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

3. **Fees.** In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement, the Company shall pay the following:

(i) *Monthly Fees*: In addition to the other fees provided for herein, upon the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $175,000 per month for the first 3 months and $150,000 per month thereafter ("Monthly Fee"). In the event that the Company files for bankruptcy protection, the Monthly Fee will increase to $200,000 per month. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Houlihan Lokey agrees that it will credit twenty-five percent (25%) of the Monthly Fees received during months 4 through 6 and fifty percent (50%) of the Monthly Fees received thereafter against the Transaction Fees (as defined below) in excess of $1,000,000 to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fees be reduced below zero; and

(ii) *Transaction Fee(s)*: In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

a. *Bank Amendment Transaction Fee.* Upon the closing of a Bank Amendment Transaction (defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Bank Amendment Transaction Fee") of $250,000 if the amendment materially amends the Company's covenant structure and/or other material terms of the existing bank documents are modified (e.g., rate, fees, maturity/amortization or the like) (a "Covenant Amendment"). To the extent that in connection with or subsequent to the Covenant Amendment, the Company enters into a Bank Amendment Transaction that permits the combination of any or all of the exchanges listed in Section 5(ii)-(iv) sought by the Company, then an additional $750,000 shall be payable by the Company to Houlihan Lokey;

b. *Secured Debt Exchange Transaction Fee.* Upon the closing of a Secured Debt Exchange Transaction (defined below) that is not otherwise a part of a Senior Note Exchange Transaction or Discount Note Exchange Transaction (each as defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Secured Debt Exchange Transaction Fee") of $250,000;

c. *Senior Note Exchange Transaction Fee.* Upon the closing of a Senior Note Exchange Transaction (defined below) that is not a 3(a)(9) Transaction (defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Senior Note Exchange Transaction Fee") of $1,000,000;

d. *Discount Note Exchange Transaction Fee.* Upon the closing of a Discount Note Exchange Transaction (defined below) that is not a 3(a)(9) Transaction (defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Discount Note Exchange Transaction Fee") of $1,000,000;

e. *Work Fee.* Alternatively, in the event the Company determines to attempt to consummate an exchange offer pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended (a "3(a)(9) Transaction") with respect to the Senior Notes or the Discount Notes, Houlihan Lokey will be paid a cash fee (the "Work Fee") in lieu of a Senior Note Exchange Transaction Fee or Discount Note Exchange Transaction Fee, payable 60 days following the commencement of such 3(a)(9) Transaction. The Work Fee for the Senior Note Exchange Transaction shall be $1,000,000 and the Work Fee for the Discount Note Exchange Transaction shall be $1,000,000;

f. *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (i) 1.0% of the gross proceeds of any indebtedness raised or committed and subsequently closed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company; (ii) 3.0% of the gross proceeds of any indebtedness raised or committed and subsequently closed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (iii) 5.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed and subsequently closed; provided, however, that any Financing Transaction Fee earned in connection with a rights offering to existing security holders as part of a bankruptcy plan implemented in accordance with the terms of the Plan Support Agreement entered into with the Informal Committee of Senior Notes will be limited to 1% of the gross proceeds raised regardless of whether raised through the issuance of secured indebtedness, unsecured indebtedness or equity. No fee shall be payable in respect of any warrants issued in connection with a Restructuring Transaction. It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent (or other issuer of the Securities in such Financing Transaction) or directly by the Company or any of its affiliates. Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of securities issued in exchange for such consideration multiplied by the per security price paid in the then current round of financing. The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any Investor or other purchaser of Securities to secure its financing commitment. To the extent that the Financing Transaction (defined below) reduces the required size of any other Transaction laid out below in paragraph 5(i) to 5(v) through the use of the newly raised capital, that

specific Transaction Fee will be adjusted lower on a pro-rata basis depending on exact reduction in the size of the relevant Transaction (e.g. fifty-eight percent (58%) of the Company's credit agreement dated August 15, 2008 is refinanced with the remaining forty-two percent (42%) still outstanding and subject to a Restructuring Transaction, which if completed would result in forty-two percent (42%) of that portion of the Restructuring Fee relating to the Bank indebtedness being payable to Houlihan Lokey; and

g. *Restructuring Transaction Fee.* It is understood and agreed that the Company is currently contemplating pursuing a restructuring pursuant to a plan of reorganization under Chapter 11 of the Bankruptcy Code or otherwise (as further defined below, a "Restructuring Transaction"). The parties agree that upon the confirmation of such a plan of reorganization pursuant to an order of the applicable bankruptcy court, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of one percent (1.00%) of the principal amount including accrued but unpaid interest of any and all indebtedness of the Company that is cancelled and/or restructured, as such indebtedness may be reduced by a Financing Transaction. Notwithstanding anything to the contrary in this Agreement, the parties further agree that upon the confirmation of a Restructuring Transaction, such Restructuring Transaction Fee, together with any such related Financing Transaction Fee, shall be the sole and exclusive Transaction Fees earned by Houlihan Lokey from and after the Effective Date pursuant to this Section 3(ii) and that no other Transaction Fees shall be deemed earned or payable to Houlihan under this Agreement including without limitation under paragraphs a through e, inclusive of this Section 3(ii). Any such Restructuring Transaction Fee and Financing Transaction Fee shall be subject to offset for the Monthly Fees as provided in Section 3(i).

h. *Restructuring Transaction Work Fee.* Notwithstanding anything to the contrary in the immediately preceding paragraph or elsewhere in this Agreement, it is understood and agreed that the Company currently contemplates that it will solicit votes for the Plan from the holders of the Company's Senior Notes and the Discount Notes (collectively, the "Notes") pursuant to the exemption provided by Section 3(a)(9) of the Securities Act of 1933, as amended, and that such solicitation (the "Note Solicitation") will constitute a Section 3(a)(9) Transaction under this Agreement. In connection therewith, Houlihan Lokey will be paid a Restructuring Transaction work fee in cash of $3,025,000 (the "Restructuring Transaction Work Fee") in lieu of a Restructuring Transaction Fee in connection with the restructuring of the Notes. Such Restructuring Transaction Work Fee will be reduced by any Financing Transaction Fee earned in connection with a rights offering to existing security holders contemplated by the terms of the Company's Plan Support Agreement dated September 3, 2009 (as amended). The Restructuring Transaction Fee in respect of the Company's Secured Debt shall remain unchanged. The Restructuring Transaction Work Fee will be payable on the earlier to occur of 180 days after the commencement of the solicitation or the effective date of the Plan. The Work Fee will be subject to offset for the Monthly Fees to the same extent as the Restructuring Transaction Fee as provided in Section 3(i) above.

There shall not be more than one fee triggered pursuant to each of Sections 3(ii)(a); 3(ii)(b); 3(ii)(c) and/or 3(ii)(e) (in connection with a 3(a)(9) Transaction for Senior Notes); 3(ii)(d) and/or (3(ii)(e) (in connection with a 3(a)(9) Transaction for Discount Notes); 3(ii)(f); 3(ii)(g), and 3(ii)(h) (in connection with a 3(a)(9) Restructuring Transaction for the Notes) and as further provided in Sections 3(ii)(g) and 3(ii)(h) only a Restructuring Transaction Fee, a Restructuring Transaction Work Fee and related Financing Transaction Fee may be earned in connection with a Restructuring Transaction. For the avoidance of doubt, notwithstanding anything else in this Agreement, the aggregate amount of: the Bank Amendment Transaction Fee shall be $1,000,000; the Secured Debt Exchange Transaction Fee shall be $250,000; the Senior Note Exchange Transaction Fee and/or Work Fee in respect of such Transaction shall be $1,000,000; and the Discount Note Exchange Transaction Fee and/or Work Fee in respect of such Transaction shall be $1,000,000, even if there shall be more than one such exchange or amendment.

Any Bank Amendment Transaction Fee, Secured Debt Exchange Transaction Fee, Senior Note Exchange Transaction Fee, Discount Note Exchange Transaction Fee, Work Fee, Financing Transaction Fee, Restructuring Transaction Fee and Restructuring Transaction Work Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4. **Term and Termination.** This Agreement may be terminated at any time by Brown Rudnick, the Company or Houlihan Lokey upon five business days' prior written notice to the other party and in any event on the six month anniversary of this Agreement if not otherwise extended to a specified date in writing by Brown Rudnick and the Company. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement; provided, however, in no event shall Houlihan Lokey be entitled to any Transaction Fee following the voluntary termination of this Agreement by Houlihan Lokey for any reason other than a material breach by the Company (a "Voluntary Termination") or by Brown Rudnick or the Company in the case of fraud, gross negligence, intentional misconduct or material breach of this Agreement by Houlihan Lokey after reasonable notice and an opportunity to cure (a "Cause Termination").

In addition, except in the case of a Voluntary Termination or Cause Termination, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if a binding agreement to consummate a Transaction is executed by the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated within six months following such execution with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing. Notwithstanding the above, the Tail Period will not apply to a Financing Transaction (defined below) after a sale of (a) 50% or more of the outstanding common stock of the Company, or (b) all or substantially all of the assets of the Company constituting a change of control of the Company.

5. **Transaction.** As used in this Agreement, the term "Transaction" shall mean any of the following approved by the Company's Board of Directors:

(i) *Bank Amendment Transaction.* Any transaction or series of transactions that constitute a material amendment of the Company's credit agreement dated August 15, 2008 with DDJ Capital Management LLC, as administrative agent and collateral agent ("Bank Amendment Transaction"), including amending covenant structure and/or other material terms (e.g., rate, fees, maturity/amortization or the like), excluding any temporary agreements of forbearance or waiver;

(ii) *Secured Debt Exchange Transaction.* Any transaction or series of related transactions that allow DDJ Capital to exchange its current position in the Senior Notes into secured debt as part of an exchange offer ("Secured Debt Exchange Transaction");

(iii) *Senior Note Exchange Transaction.* Any transaction or series of related transactions that constitute an exchange of the Company's Senior Notes due August 2011 ("Senior Note Exchange Transaction") for other securities and/or loans issued by the Company regardless of whether such exchange is designed as a 3(a)(9) Transaction;

(iv) *Discount Note Exchange Transaction.* Any transaction or series of related transactions that constitute an exchange of the Company's Discount Notes due August 2011 ("Discount Note Exchange Transaction") for other securities and/or loans issued by the Company regardless of whether such exchange is designed as a 3(a)(9) Transaction;

(v) *Financing Transaction.* (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the Company's existing obligations and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by any entity comprising the Company (any or all of which being "Securities"), from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, whether the requisite consents to transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction"); and

(vi) *Restructuring Transaction.* Any transaction or series of transactions that constitute a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations) of the Company, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt and the Company's Secured Debt, Senior Notes, and Discount Notes, which recapitalization or restructuring is effected pursuant to a plan of reorganization under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase,

conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of the Company (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring Transaction")

6. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company.

7. **Expenses.** In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, that are out-of-pocket expenses incurred by Houlihan Lokey and directly identifiable to services provided to Brown Rudnick.

Houlihan Lokey shall, in addition, be reimbursed by the Company for Houlihan Lokey's reasonable out-of-pocket fees and expenses for outside legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby.

Notwithstanding anything else in this Agreement, in no event shall the fees and expenses of Houlihan Lokey payable by the Company pursuant to this Section 8 or any other section herein exceed $100,000 without the prior written consent of the Company.

8. **Bankruptcy Court Approval.** In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition

capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its reasonable best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its reasonable discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects. If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

9.  **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

10. **Information.** The Company acknowledges that in order for Houlihan Lokey to perform its services hereunder in the most efficient way possible, Houlihan Lokey will require such information and data that Houlihan Lokey shall reasonably request and full access, as reasonably requested, to Brown Rudnick and the Company's management and other representatives of the Company, as reasonably requested by Houlihan Lokey. The Company further acknowledges that Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of Brown Rudnick and the Company or any other potential party to any Transaction or otherwise reviewed by Houlihan Lokey. Brown Rudnick understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Company further

acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Company or any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of Brown Rudnick. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent. Notwithstanding this Section 10, Brown Rudnick or the Company may (i) make such disclosures as required for compliance with applicable disclosure obligations pursuant to its Securities and Exchange Commission filings and (ii) if appropriate, provide such disclosures as deemed appropriate by the Company to comply with the provisions of the Company's existing debt documents.

11.  **Confidential Information.** Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction ("Confidential Information") has been or may be disclosed by Brown Rudnick or the Company to Houlihan Lokey or its employees, affiliates, attorneys, subcontractors and advisors (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other person (other than to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives; (b) obtained by Houlihan Lokey or any of its Representatives from a third person which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey or any of its Representatives. If Houlihan Lokey becomes required by legal process or regulatory authority to disclose any Confidential Information, prompt notice thereof shall be given to the Company, and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. In addition, neither Houlihan Lokey nor any of its Representatives will oppose action by the Company to obtain an appropriate protective order or other reliable assurance that such confidential treatment will be so accorded and Houlihan Lokey and its Representatives shall cooperate, at the Company's expense, with the Company to obtain such order or other assurance. Houlihan Lokey's obligations under this paragraph shall remain in effect for a period of one year after the Effective Date of this Agreement.

12.  **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities. Houlihan Lokey is providing Brown Rudnick with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and Brown Rudnick or the Company and/or its creditors or any other person, on the other hand. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of Brown Rudnick in

considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion.

13. **Additional Services.** To the extent Houlihan Lokey is requested by Brown Rudnick to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by Houlihan Lokey, Brown Rudnick and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

14. **Post-Termination Services.** If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

15. **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to Brown Rudnick with respect to such Transaction.

16. **Choice of Law; Jury Trial Waiver; Jurisdiction.** THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE

INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS. THE COMPANY AGREES THAT A FINAL NON-APPEALABLE JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY'S PRINCIPAL EXECUTIVE OFFICES, CURRENTLY AT 10 KING STREET, WHITE PLAINS, NY 10604.

17. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each an "Indemnified Party" and collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement and (ii) to reimburse each Indemnified Party for all reasonable out-of-pocket expenses (including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to this Agreement, or such engagement, Transaction or actions. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the fraud, willful misconduct or gross negligence of such Indemnified Party.

Promptly upon receipt by an Indemnified Party of notice of a claim or the commencement of any action, if an indemnification claim in respect thereof is to be made against the Company, the Indemnified Party shall notify the Company in writing of the claim or commencement of such action; provided, that the failure to so notify shall not relieve the Company from any liability that it may have pursuant to this Agreement except to the extent that it has been materially prejudiced by such failure to so notify. If any person is entitled to indemnification under this Agreement with respect to any action or proceeding brought by a third party, the Company shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Party. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Party in connection

with the defense thereof unless (i) the Company has agreed to pay such fees and expenses, (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) the Indemnified Party shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Party, including situations in which there are one or more material legal defenses available to the Indemnified Party that are different from or additional to those available to the Company.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under the Agreement. The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution has been sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or

any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly (including by operation of law) provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of this Agreement (including the agreement set forth in the immediately preceding sentence), that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to pursue injunctive relief and specific performance.

For the avoidance of doubt, Brown Rudnick shall have no liability to indemnify Houlihan Lokey pursuant to this Section 17 or otherwise.

18. **Miscellaneous.** While Houlihan Lokey is being retained by Brown Rudnick, it is agreed that Brown Rudnick shall have no liability for the fees, expenses or costs of Houlihan Lokey. Instead, the Company shall solely be responsible for such fees and expenses. The Company confirms its responsibility for such fees, expenses and obligations and evidences its agreement to the terms and conditions of this Agreement.

This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets. If appropriate, in connection with performing its services for Brown Rudnick hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates, provided, however, that the fees and other obligations described herein comprise all compensation and other obligations to be paid to Houlihan Lokey and its affiliates, and neither Houlihan Lokey, nor any affiliate of Houlihan Lokey, shall charge any separate or additional fees, or seek the payment of any additional obligations, for services rendered pursuant hereto.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of each of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company (and its direct and indirect subsidiaries and controlled affiliates), enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. Brown Rudnick and the Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof.

All of us at Houlihan Lokey thank you for choosing us to advise Brown Rudnick, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____

William H. Hardie, III
Managing Director


Accepted and agreed to as of the Effective Date:

BROWN RUDNICK LLP
in its capacity as counsel to the Company

By: _____
Name: Philip J. Flink
Title: Partner


Haights Cross Communications, Inc., On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer


Haights Cross Operating Company, On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof.

All of us at Houlihan Lokey thank you for choosing us to advise Brown Rudnick, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
William H. Hardie, III
Managing Director


Accepted and agreed to as of the Effective Date:

BROWN RUDNICK LLP
in its capacity as counsel to the Company

By: */signature/*
Name: Philip J. Flink
Title: Partner


Haights Cross Communications, Inc., On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer


Haights Cross Operating Company, On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof.

All of us at Houlihan Lokey thank you for choosing us to advise Brown Rudnick, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
William H. Hardie, III
Managing Director


Accepted and agreed to as of the Effective Date:

BROWN RUDNICK LLP
in its capacity as counsel to the Company

By: _____
Name: Philip J. Flink
Title: Partner


Haights Cross Communications, Inc., On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer


Haights Cross Operating Company, On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: _____
Paul J. Crecca
President and Chief Executive Officer